UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

JOHANNA DETERDING,         )
                                 )
    Plaintiff,             )
                                 )
    v.                    )     Case No:1:11-CV-13
                                 )     Collier/Carter
MICHAEL S. ASTRUE,        )
Commissioner of Social Security,  )
                                 )
    Defendant.            )

<u>REPORT AND RECOMMENDATION</u>

This action was instituted pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking

judicial review of the final decision of the Commissioner denying the plaintiff a period of

disability, disability insurance benefits, and supplemental security income under Title II and

Title XVI of the Social Security Act, 42 U.S.C. §§ 416(I), 423, and 1382. [1]

This matter has been referred to the undersigned pursuant to 28 U.S.C. § 636(b) and Rule

72(b) of the Federal Rules of Civil Procedure for a report and recommendation regarding the

disposition of plaintiff's motion for judgment on the pleadings (Doc. 11) and defendant's motion

for summary judgment (Doc. 17 ).

For the reasons stated herein, I **RECOMMENDED** the Commissioner's decision be

**REVERSED** and **REMANDED** pursuant to Sentence Four of 42 U.S.C. § 405(g).

---

[1]Since the relevant DIB and SSI regulations cited herein are virtually identical, citations
will only be made to the DIB regulations, found at 20 C.F.R. §§ 404.1500-404.1599. The
parallel SSI regulations are found at 20 C.F.R. §§ 416.900-416.999, corresponding to the last
two digits of the DIB cites (e.g., 20 C.F.R. § 404.1545 corresponds with 20 C.F.R. § 416.945).

1

+

<u>Plaintiff's Age, Education, and Past Work Experience</u>

Plaintiff had a high-school education, along with three years of college, and was 40 years old at the time of her February 2009 hearing (Tr. 25)  Plaintiff testified she was in a car accident in September 2007, but suffered no permanent injuries (Tr. 26).  Her primary complaint was facial pain, but she also had problems with her neck and left hand (Tr. 26-27).  She said her pain medication caused her to be constipated, groggy, and sleepy, and it was mainly the pain that kept her from returning to work (Tr. 26-27).  The facial pain started after a root canal where chemicals burned a nerve in her tooth (Tr. 28).  She said she was fired from two jobs after the root canal because she could not maintain a schedule and had trouble talking due to the pain (Tr. 28-29).  Plaintiff said she relieved her pain by taking medication along with napping for longer than 30 minutes (Tr. 29).

<u>Applications for Benefits</u>

Plaintiff applied for Social Security Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) in April 2007, alleging disability since February 28, 2007,[2] due to a "[c]hemically damaged nerve in [her] mouth" (Tr. 9, 85-93, 101).  After her applications applications were denied initially and upon reconsideration, Plaintiff requested an administrative hearing (Tr. 58-63, 67-74).  The administrative law judge (ALJ) held a hearing on February 11, 2009, at which Plaintiff appeared with counsel and testified, along with a vocational expert (Tr. 22-32).  In a decision dated July 2, 2009, the ALJ found that Plaintiff was not disabled because she could perform her past relevant work despite the limitations caused by her impairments (Tr.

---

[2]  Through her representative's pre-hearing memorandum, Plaintiff later amended her alleged onset date of disability to November 1, 2007 (Tr. 9, 96).

2

9-21). On November 23, 2010, the ALJ's decision became the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review (Tr. 1). See 20 C.F.R. §§ 404.955, 404.981.[3] Under 42 U.S.C. §§ 405(g) and 1383(c)(3), Plaintiff initiated this civil action action for judicial review of the Commissioner's final decision. Plaintiff seeks judicial review under 42 U.S.C. § 405(g).

<u>Standard of Review - Findings of the ALJ</u>

Disability is defined as the inability to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. §423(d)(1)(A). The burden of proof in a claim for Social Security benefits is upon the claimant to show disability. *Barnes v. Secretary, Health and Human Servs.*, 743 F.2d 448, 449 (6th Cir. 1984); *Allen v. Califano*, 613 F.2d 139, 145 (6th Cir. 1980); *Hephner v. Mathews*, 574 F.2d 359, 361 (6th Cir. 1978). Once, however, the plaintiff makes a prima facie case that he/she cannot return to his/her former occupation, the burden shifts to the Commissioner to show there is work in the national economy which he/she can perform considering his/her age, education and work experience. *Richardson v. Secretary, Health and Human Servs.*, 735 F.2d 962, 964 (6th Cir. 1984); *Noe v. Weinberger*, 512 F.2d 588, 595 (6th Cir. 1975).

The standard of judicial review by this Court is whether the findings of the Commissioner are supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 28

---

[3] The regulations governing DIB and SSI are codified independently, but those relevant to this case are virtually identical. Therefore, we cite solely to the regulations governing DIB, found at 20 C.F.R. §§ 404.900-.999 and 20 C.F.R. §§ 404.1500-.1599. The parallel SSI regulations may be found at 20 C.F.R. §§ 416.1400-.1499 and 20 C.F.R. §§ 416.900-.999.

L. Ed. 2d 842, 92 S. Ct. 1420 (1971); *Landsaw v. Secretary, Health and Human Servs.*, 803 F.2d

211, 213 (6th Cir. 1986). Even if there is evidence on the other side, if there is evidence to

support the Commissioner's findings they must be affirmed. *Ross v. Richardson*, 440 F.2d 690,

691 (6th Cir. 1971). The Court may not reweigh the evidence and substitute its own judgment

for that of the Commissioner merely because substantial evidence exists in the record to support

a different conclusion. At the same time, "the substantiality of evidence must take into account

whatever in the record fairly detracts from its weight.'" Garner v. Heckler, 745 F.2d 383, 388

(6th Cir. 1984); Hurst, 753 F.2d at 519 (6th Cir. 1985). The substantial evidence standard allows

allows considerable latitude to administrative decision makers. It presupposes there is a zone of

choice within which the decision makers can go either way, without interference by the courts.

*Felisky v. Bowen*, 35 F.3d 1027 (6th Cir. 1994) (citing *Mullen v. Bowen*, 800 F.2d 535, 548 (6th

Cir. 1986)); *Crisp v. Secretary, Health and Human Servs.*, 790 F.2d 450 n. 4 (6th Cir. 1986).

As the basis of the decision of July 2, 2009 that plaintiff was not disabled, the ALJ made
the following findings:

1. The claimant meets the insured status requirements of the Social Security
   Act through December 31, 2012.

2. The claimant has not engaged in substantial gainful activity since
   November 1, 2007, the amended alleged onset date of disability (20 CFR
   404.1571 *et seq*., and 416.971 *et seq*).

3. The claimant has the following "severe" impairments: a history of
   degenerative disc disease of the cervical spine with radiculopathy; a
   history of facial pain attributable to trigeminal neuralgia; and an
   adjustment disorder with depressed mood (20 CFR 404.1520(c) and
   416.920(c)).

4. Applying the function-by-function analysis required by SSR 96-8p and
   20 CFR 404.1545 and 416.945 and after careful consideration of the
   entire record including all "severe" and "non-severe" impairments
   substantiated in the medical and other evidence of record, I find that the

4

claimant has the residual functional capacity to perform sedentary work, with the ability to lift/carry up to 10 pounds and stand and/or walk up to 1-2 hours and/or sit 6-8 hours during an 8-hour period with normal breaks. She has adequate fine and gross coordination/manipulation of the upper extremities with the ability to push/pull, grasp, reach, finger, handle, and feel. She has adequate ability to balance and maneuver the spine to bend, stoop, kneel, and crouch. She should not climb or crawl. There is adequate ability to see, hear, and speak. There is adequate ability to understand, remember and carry out job instructions, interact appropriately with supervisors, coworkers and the general public (to the minimal extent consistent with competitive work), use judgment, and deal with ordinary changes in a routine work setting. Although somewhat limited by pain and other symptoms, there nevertheless is an adequate ability to perform activities within a schedule, maintain regular attendance, and be punctual with customary tolerances. (20 CFR 404.1567(a)). The claimant should not speak for extended periods of time.

5. The claimant is capable of performing past relevant work as a data entry clerk. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).

6. The claimant has not been under a "disability," as defined in the Social Security Act, from November 1, 2007, through the date of this decision (20 CFR 404.1520(a)-(g) and 416.920(a)-(g)).

(Tr. 11-21).

## Issue Presented

Plaintiff contends:

1) The ALJ Did Not Apply the Appropriate Legal Standards in Reviewing the Credibility of Plaintiff's Symptoms, and

2) The ALJ Erred by Failing to Give Treating Physician Dr. J. Kirk Rogers, D.O. Controlling Weight.

## Review of Medical Evidence

5

A. <u>Medical Evidence Prior to November 1, 2007 (Plaintiff's Alleged Onset Date)</u>

In 2006, Plaintiff saw James Killeffer, M.D., for complaints of chronic, severe facial pain that developed after a dental procedure, a root canal, and became exacerbated by eating and speaking (Tr. 174). Plaintiff reported she has had several nerve blocks to address the facial pain, but they were not effective. She also had a tooth pulled which provided her no relief. Pain medications have helped minimally. (Tr. 174). On examination, Dr. Killeffer noted that Plaintiff was in no acute distress, was alert and oriented, and had normal strength and coordination in her arms and legs (Tr. 174). Dr. Killeffer diagnosed neuropathic pain (not typical trigeminal neuralgia) (Tr. 175). He recommended motor cortical nerve stimulation and peripheral nerve stimulation. (Tr. 175).

In 2007, Plaintiff saw several doctors for complaints of facial neuropathy (tingling sensation and numbness) in left side of chin and lips and cervical radiculopathy. In January 2007, Plaintiff saw Donald Chipman, M.D., for complaints of facial pain (Tr. 191). On examination, Dr. Chipman noted that Plaintiff was able to communicate normally, and her gait, memory, attention span and mental status were normal. He diagnosed Plaintiff with adjustment disorder with depressed mood and trigeminal neuralgia. Plaintiff reported her pain in the left jaw and face was getting worse (Tr. 193).[4] She reported her pain level as a 5 on the VAS scale[5] with

---

[4] Trigeminal neuralgia is a chronic pain condition that affects the trigeminal nerve, which carries sensation from your face to your brain. (*see* Doc. 18, Defendant's Memorandum at p 3, referring to http://www.mayoclinic.com/health/trigeminal-neuralgia/DS00446).

5 The VAS pain scale of Visual Analog Scale is described as follows:

6

one being no pain and 10 being the worst possible pain. (Tr. 191). She was taking methadone, hydrocodone-acetaminophen, lidocaine, and Lyrica for the pain in her face. (Tr. 192).

In February 2007, Plaintiff saw Thomas Miller, M.D., for complaints of pain in the left side of her face and left shoulder and arm pain.  Plaintiff reported medications were working but the pain was getting worse and she fell asleep at work and while driving due to the medications. (Tr. 187).  Dr. Miller noted that Plaintiff was able to communicate normally and her gait and mental status, memory and concentration were normal.  Dr. Miller diagnosed Plaintiff with trigeminal neuralgia (Tr. 189). Plaintiff was taking Ambien, hydrocodone-acetaminophen, Fluoxetine, lidocaine, methadone, Phenergan, Provigil. (Tr. 188).  He recommended a cervical MRI for the pain in her arm and peripheral stimulation for her facial pain. (Tr. 188).

Plaintiff also saw Kirk Rogers, D.O., in February 2007 for complaints of left trapezius discomfort radiating to the left shoulder and hand (Tr. 317-321).  On examination, Dr. Rogers noted that Plaintiff's neck was supple with adequate range of motion; her shoulder examination was unrevealing; her left upper arm was neurovascularly intact, and Phalen's and Tinel's signs were negative (Tr. 321). Plaintiff reported her arm was hurting more and she was ex[eriening tingling and numbness.  Dr. Rogers diagnosed Plaintiff with chronic facial pain and "[p]robable left upper extremity neuropathy, radiculopathy likely" (Tr. 321).  She was taking Prozac, Ambien



7

Ambien CR, Lyrica, Lortab and methadone. (Tr. 321). Dr. Rogers also prescribed a Medrol dose dose pak, *i.e.*, steroids, to reduce inflammation. He also recommended a nerve conduction study study and a cervical MRI. (Tr. 321).

A March 2007 MRI of Plaintiff's cervical spine (neck) showed a disc bulge at level C5-6 and a disc protrusion at level C6-7 (Tr. 276-78).

In April 2007, Plaintiff returned to Dr. Miller and reported facial and jaw pain. (Tr. 183). His examination findings were normal as to gait, memory, attention span and concentration. (Tr. 185). Plaintiff reported pain in the left side of the face at a level of 6 to 7 when present and occasionally at the 9 to 10 level. Plaintiff noted pain occurred when she ate or talked. Dr. Miller diagnosed Plaintiff with adjustment disorder with depressed mood, trigeminal neuralgia, and cervical degenerative disc disease and radiculopathy (based on her recent MRI) (Tr. 185). Her medications included fluoxetine, and hydrocodone-acetaminophen, methadone,

Also in April 2007, on referral by Dr. Rogers for pain in her left arm, Plaintiff saw Jay Jolley, II, M.D., at the Center For Sports Medicine & Orthopaedics (Tr. 280). She complained of pain in her neck and left upper arm. (Tr. 280). She also reported an aching and stabbing pain in her jaw at a level of 4 or 5 out of 10. Dr. Jolley's examination was essentially normal, including normal strength and sensation (Tr. 282). Dr. Jolley reviewed x-rays and MRI of her cervical spine and diagnosed left upper extremity radiculopathy, cervical degenerative disc disease at C5-7 with kyphosis at level C5-6, and a herniated disc at C6-7 (Tr. 282).[6] Plaintiff was taking Lortab, methadone, Lyrica, Prozac and Ambien.

---

[6]At Dr. Jolley's follow-up evaluation on June 7, 2007, he noted no change in his findings (Tr. 284).

Plaintiff returned to Dr. Chipman in May 2007, complaining of facial pain on a level of 4 out of 10 when present (Tr. 179). Dr. Chipman noted that Plaintiff was able to communicate normally; her gait and station were normal. Her memory, attention span and concentration and mental status was normal (Tr. 181). Dr. Chipman diagnosed adjustment disorder with depressed mood; trigeminal neuralgia; and cervical disc degeneration and radiculopathy (Tr. 181). He noted good reactions to the methadone and hydrocodone-acetaminophen, but that plaintiff becomes very drowsy with these medications. (Tr. 179). She was also taking Lyrica, Phenergen, Provigil and fluoxetine. (Tr. 180 -181).

In July 2007, Dr. Rogers saw Plaintiff on two separate occasions and noted normal examination findings. She reported cold sweats and chills. She appeared alert, oriented and in no acute distress. On July 31, 2007 he diagnosed her with chronic, painful trigeminal neuropathy at the second appointment (Tr. 368-69). In August 2007, Plaintiff reported to Dr. Rogers that she was unable to work talking on the phone because it caused unbearable pain in her face. (Tr. 367). She also reported difficulty with sedation and over sleeping, and trouble working on a computer because it aggravated her cervical radiculopathy (Tr. 367). Dr. Rogers noted that Plaintiff was holding her chin in an unusual position, but his examination was otherwise unremarkable; he diagnosed facial neuropathy. He suggested limiting work to 30 hours a week, and noted he would ask that she not be required to talk on the phone. (Tr. 367).

Plaintiff saw Dr. Miller again in August 2007, with complaints of pain in the left side of her chin, lip, and neck. She reported her pain level had become more severe and was at a level 8 out out of 10 when present. Dr. Miller's notes also described her pain level as "moderate to severe." Her functional impairment was severe interfering with most but not all daily activities when the

pain was present(Tr. 410). She reported the pain as stabbing, stinging, shooting, burning and cramping. Dr. Miller noted that Plaintiff was able to communicate normally and her gait and mental status were normal as was her attention span and concentration; his diagnosis was unchanged from his previous examination (Tr. 412). Plaintiff was continuing to take her several pain medications and reported drowsiness as a result.  Dr. Miller saw Plaintiff on September 12, 2007.  Her pain was mild to moderate and functional impairment was moderate. Her need for pain medications had increased and her pain level was a 7 out of 10.  Other than her mood being being depressed, his findings and diagnoses from his August 2007 exam were unchanged (Tr. 406-08).    On September 18, 2007, Plaintiff received emergency medical services at Memorial Hospital following a car accident (Tr. 359-62).  She complained of pain in her neck and legs; other than reversal of the usual cervical lordosis (possibly due to positioning or muscle spasm) x-rays were unremarkable (Tr. 359-62).  On September 26, 2007, Dr. Rogers examined Plaintiff following the car accident and noted that the x-rays were normal and Plaintiff had adequate range of motion in her neck. He diagnosed her with whiplash symptomatology and chronic pain from neuropathy (Tr. 366).  She was continuing to take methadone, lortab, Lyrica, Prozac, Ambien, and Provigil.

The next day, less than 45 days prior to her alleged onset date, Dr. Rogers completed a pre-printed questionnaire, in which he indicated that Plaintiff experienced chronic pain in her left chin and mandible that lasts hours daily and prevents her from working an eight-hour day, 40-40-hour work week (Tr. 371-73).  He noted that pain limited Plaintiff's ability to talk to only a few minutes, but it did not affect her ability to stand, sit, and walk (Tr. 371).  He opined Plaintiff Plaintiff could occasionally lift/carry items weighing less than 10 pounds and that her pain

limited the use of her hands (Tr. 372-73). He further opined that Plaintiff's pain affected her concentration, and her medication side effects affected her concentration, coordination, and memory (Tr. 372). She was taking Methadone, Lyrica, Lortab, Ambien for pain and it was ineffective infrequently.

In October 2007, Plaintiff reported to Dr. Miller that she had pain in her lower left chin, lip, and gum. Pain was a level 5 out of 10 and "mild to moderate." She reported increased need for for pain medication but her meds kept her pain tolerable (Tr. 401). She continued to take the same array for medicines but add Klonopin for anxiety. On examination, Plaintiff was depressed, but was able to communicate normally, her station and gait were normal, normal orientation, memory, attention span and concentration, and her mental status was otherwise normal (Tr. 403).

Plaintiff also attended a consultative mental status evaluation prior to her amended alleged onset date. Joelle Burkett, M.A., and Kenneth Nickerson, Ph.D., evaluated Plaintiff in August 2007 (Tr. 347-350). Plaintiff's mood was depressed and her affect was congruent, but her mental mental status was otherwise normal. She held her chin with her hand throughout the examination saying it helped ease pain. She appeared to drool from the left side of her mouth. She reported she cannot drive due to her medications and that she tries not to move her facial muscles because it causes pain. She stated a bad day is when she is in constant pain and cannot do anything and a good day is when she can speak without pain and eat something besides soft foods. Her intellectual function was assessed to be average (Tr. 348). The examiners diagnosed diagnosed her with adjustment disorder with depressed mood and assigned her a Global Assessment of Functioning (GAF) score of 60 (Tr. 349), indicating that she was experiencing no

more than moderate symptoms or difficulty in any mental function.[7]  The evaluators opined that

Plaintiff's ability to understand and remember was without significant limitation; her ability to

sustain concentration and persistence was "mildly" limited; her social interaction was without

limitation; and her ability for adaptation was "moderately" limited (due to fatigue) (Tr. 349).

B. Medical Evidence On or After November 1, 2007

On November 1, 2007, Plaintiff saw Dr. Miller for complaints of pain in her entire left arm

(Tr. 397).  Her pain level was an 8 out of 10.  Plaintiff reported that her medications were

working "fairly" with no reported side effects, but her pain was moderate-to-severe and

interfered with most of her daily activities when present (Tr. 397). She reported her need for pain

medications had increased.  She continued to take the same array of medications and added

Flexeral for muscle spasms.  Dr. Miller's examination of Plaintiff's musculoskeletal and

neurological systems, and of her psychiatric function, was normal, and she had a normal ability

to communicate, normal orientation, memory, attention span and concentration (Tr. 399).

On November 29, 2007, Plaintiff reported to Dr. Chipman that her pain level was a 6 out of

10 but her current medications were controlling her pain, which was mild-to-moderate and

"interfere[d] only with some daily activities" when present (Tr. 393).  She reported no side-

side-effects from her medications (Tr. 393).  Dr. Chipman's examination showed normal

---

[7]  The GAF scale reflects a "clinician's judgment" of the individual's symptom severity or level of functioning (Doc 18, Defendant's Memorandum, p 6), referring to American Psychiatric Association, Diagnostic & Statistical Manual of Mental Disorders, 32-33 (4th ed., Text Rev. 2000) (DSM-IV-TR).  The higher the number, the higher the level of functioning.  Id.  A GAF score of 71-80 reflects "no more than slight impairment."  Id. at 34.  A GAF score of 61-70 reflects "some mild symptoms" or "some difficulty in social, occupational, or school functioning . . . but generally functioning pretty well."  Id.  A GAF score of 51-60 reflects "moderate symptoms" or "moderate difficulty in social, occupational, or school functioning."  Id.

functioning, including a normal ability to communicate, normal attention span and concentration (Tr. 395).

On March 3, 2008, Plaintiff saw Dr. Miller for complaints of mild to moderate face and neck pain and left-arm numbness. Her reported pain level was 7 out of 10. Plaintiff was taking Ambien, cyclobenzaprine, hydrocodone-acetaminophen, Lyrica, Mehtadone and Prozac. The Provigil was discontinued because it was no longer working. Functional impairment was moderate (Tr. 450-52). On examination, Dr. Miller noted that Plaintiff was able to communicate normally, she was neurologically intact, and her gait and mental status were normal including her attention span and concentration (Tr. 451). Dr. Miller diagnosed Plaintiff with cervical radiculopathy (Tr. 451). Plaintiff returned to Dr. Miller in April, July, and August 2008 (Tr. 441-49). Dr. Miller's examination findings did not change from his March 2008 examination, and he consistently noted that Plaintiff's pain, reported to be level 6 or 7, "when present . . . interfere[d] only with some daily activities" (Tr. 441, 444, 447). In July, Plaintiff reported that her current medication "work[ed] well and [she] denie[d] any side effects" (Tr. 444) though she did state she is groggy ion the morning but more alert in the afternoon. (Tr. 444). Dr. Miller noted he was going to write prescriptions for two month as opposed to one month for schedule 2 substances because "[t]his patient currently shows no signs of misuse or compliance issues." (Tr. 446).

*Vocational Expert Testimony*

The vocational expert testified that a hypothetical person with Plaintiff's vocational characteristics who could perform sedentary work[8] limited to unskilled work performing simple,

---

[8] Sedentary work is defined as "lifting no more than 10 pounds at a time and

13

repetitive tasks with minimal interaction with coworkers, supervisors, and the general public could perform Plaintiff's past relevant work as a data entry clerk (Tr. 30-31).

Analysis

For reasons that follow, I conclude the Commissioner's decision is not supported by substantial evidence and remand under sentence four is the appropriate remedy. The ALJ's stated reasons for rejecting the opinion of Dr. Rogers are not adequately supported looking at the record as a whole and the ALJ's credibility determination failed to sufficiently address reasons to discount Plaintiffs allegations of disabling pain. The ALJ's conclusion that Plaintiff is capable of a limited range of sedentary work is therefore not supported by substantial evidence. When the ALJ's findings are not supported by substantial evidence, or are legally unsound, the reviewing court should reverse and remand the case for further administrative proceedings unless "the proof of disability is overwhelming or . . . the proof of disability is strong and evidence to the contrary is lacking." *Faucher v. Sec'y of Health & Human Servs.,* 17 F.3d 171, 176 (6th Cir. 1994). I cannot say the evidence of disability is overwhelming and that no evidence exists on the other side, therefore I am recommending remand rather than reversal.

The Assessment of Plaintiff's Credibility

Plaintiff suffers from chronic, severe facial pain, depressed mood, diagnosed trigeminal neuralgia and cervical disc degeneration with radiculopathy. In 2006, Plaintiff saw James Killeffer, M.D., for complaints of chronic, severe facial pain that developed after a dental procedure and became exacerbated by eating and speaking (Tr. 174).

---

occasionally lifting or carrying articles like docket files, ledgers, and small tools." 20 C.F.R. § 404.1567(a). "Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." Id.

In 2007, Plaintiff saw several doctors for complaints of facial neuropathy (tingling sensation and numbness) and cervical radiculopathy. In January 2007, Plaintiff saw Donald Chipman, M.D., for complaints of facial pain (Tr. 191). On examination, Dr. Chipman noted that Plaintiff was able to communicate normally, and her gait and mental status were normal (Tr. 193). He diagnosed Plaintiff with adjustment disorder with depressed mood and trigeminal neuralgia (Tr. 193).[9]

In February 2007, Plaintiff saw Thomas Miller, M.D., for complaints of facial pain and left shoulder and arm pain (Tr. 187). Dr. Miller noted that Plaintiff was able to communicate normally and her gait and mental status were normal (Tr. 189). Dr. Miller diagnosed Plaintiff with trigeminal neuralgia (Tr. 189).

Plaintiff also saw Kirk Rogers, D.O., in February 2007 for complaints of left trapezius discomfort radiating to the left shoulder and hand (Tr. 317-321). Dr. Rogers diagnosed Plaintiff with "[p]robable left upper extremity neuropathy, radiculopathy likely" (Tr. 321).

A March 2007 MRI of Plaintiff's cervical spine (neck) showed a disc bulge at level C5-6 and a disc protrusion at level C6-7 (Tr. 276-78). In July 2007 Plaintiff saw Dr. Rogers on two occasions. Finally Dr. Rogers examined plaintiff on September 26, 2007 following a car accident (Tr. 366).

On September 27, 2007, less than 45 days prior to Plaintiff's alleged onset date, Dr. Rogers completed a pre-printed questionnaire, in which he indicated Plaintiff experienced chronic pain in her left chin and mandible that prevented her from working an eight-hour day,

---

[9] Trigeminal neuralgia is a chronic pain condition that affects the trigeminal nerve, which carries sensation from your face to your brain.
See http://www.mayoclinic.com/health/trigeminal-neuralgia/DS00446.

15

40-hour work week (Tr. 371-73). He noted that pain limited Plaintiff's ability to talk to only a few minutes, but it did not affect her ability to stand, sit, and walk (Tr. 371). He opined that Plaintiff could occasionally lift/carry items weighing less than 10 pounds and that her pain limited the use of her hands (Tr. 372-73). He further opined that Plaintiff's pain affected her concentration, and her medication side effects affected her concentration, coordination, and memory. He noted Plaintiff took Methadone, Lyrica and Lortab Ambien but the medication was ineffective frequently in addressing her pain. It was his opinion Plaintiff would not be reliable in attending an 8 hour a day, 40 hour work week in view of the degree of pain she experienced (Tr. 372). These findings, if accepted, would be disabling.

In April 2007, Plaintiff reported facial and jaw pain to Dr. Miller (Tr. 183). His examination findings were normal (Tr. 185). Dr. Miller diagnosed Plaintiff with adjustment disorder with depressed mood, trigeminal neuralgia, and cervical degenerative disc disease and radiculopathy (based on her recent MRI) (Tr. 185).

Plaintiff first correctly argues the appropriate rule in administrative adjudication is that all determinations must be made based upon the record in its entirety. *Houston v. Sec'y of H.H.S.*, 736 F.2d 365, 366 (6th Cir. 1984). The ALJ must consider all evidence in the file, and the written decision must also reflect this consideration. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 249 (6th Cir. 2007).

"In determining the credibility of the individual's statements, the adjudicator must consider the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and

any other relevant evidence in the case record." Soc. Sec. Rul. 96-7p, 1996 WL 374186, *1 (July 2, 1996)(Emphasis added). Rule 96-7 further states that, "it is not sufficient for the adjudicator to make a single, conclusory statement that 'the individual's allegations have been considered' or that "the allegations are (or are not) credible." *Id*. At *2 (emphasis added). A longitudinal medical record demonstrating an individual's attempts to seek medical treatment for pain or other symptoms and to follow that treatment once it is prescribed lends support to an individual's allegations of intense and persistent symptoms for the purposes of judging the credibility of the individual's statements. *Id*. At *7.

The ALJ's Decision discusses Plaintiff's testimony as follows:

> I did not discount the claimant's testimony solely on the basis of the absence or minimal nature of the objective medical records. Rather, I gave full consideration to all of the evidence presented relating to subjective complaints, including the claimant's prior work record and observations by third parties and treating and examining physicians relating, as appropriate, to such matters as: the claimant's daily activities; the duration, frequency and intensity of any pain and other symptoms; precipitating and aggravating factors; the dosage, effectiveness and side effects of mediations; and functional restrictions.

The ALJ then considers Plaintiff's claims of chronic pain:

> In her testimony at the hearing, the claimant indicated that she had not been able to perform full-time work due to chronic pain, primarily facial and neck pain. There is also reference to depression in the medical records. I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms. However, the claimant's explanation of extreme (disabling) restrictions of work-related and daily activities and functional limitations is not supported by the medical evidence of record as a whole. No treating or examining physician documented the nature, severity, and limiting effects of the claimant's impairments, with sufficient medical facts and clinical findings, which would corroborate the claimant's assertions of disabling pain and other physical and/or mental symptoms, together with functional limitations, which would preclude all full-time work. Accordingly, the claimant's testimony regarding disabling impairments and related symptoms was not found to be fully credible when evaluated in conjunction with the medical evidence of record as a whole. The claimant's statements concerning her symptoms and functional limitations along will not establish that she is disabled.

There are various references to physician's finding that Plaintiff was in "no apparent or acute distress," or where her station, gait, and mental status were normal (Tr. 13-16). The ALJ does not mention the fact that in each of these instances, Plaintiff presented herself with pain in her face and arm, or face and shoulder. *Id.* The Decision ultimately comes to the conclusion that, "[d]ue to the absence of significant objective and laboratory medical findings which provide confirmation of impairments that could reasonably be expected to cause the subjective complaints, and considering the claimant's reported activities of daily living, all of which provide an indication as to the intensity, persistence, and limitations caused by subjective complaints, I find the claimant's impairments do not satisfy both parts of the 'two prong' symptoms analysis." (Tr. 19).

The primary difficulty in this case is that trigeminal neuralgia cannot be diagnosed, documented, or measured by objective laboratory and medical findings. The Merck Manual discusses trigeminal neuralgia as follows:

> Trigeminal neuralgia (tic douloureux) is severe facial pain due to malfunction of the 5th cranial nerve (trigeminal nerve). This nerve carries sensory information from the face to the brain and controls the muscles involved in chewing.
>
> - The cause is usually unknown but sometimes is an abnormally positioned artery that compresses the trigeminal nerve.
> - People have repeated short, lightning-like bursts of excruciating stabbing pain in the lower part of the face.
> - ***Doctors base the diagnosis on the characteristic pain.***
> - Certain anticonvulsants or antidepressants, baclofen , or a local anesthetic may relieve the pain, but surgery is sometimes needed.
>
> Trigeminal neuralgia usually occurs in middle-aged and older people, although it can affect adults of all ages. It is more common among women.
>
> In most cases, the cause is unknown. A common known cause is an abnormally

18

positioned artery that compresses the trigeminal nerve near where it exits the brain. Occasionally in younger people, trigeminal neuralgia results from nerve damage due to multiple sclerosis. Rarely, trigeminal neuralgia results from damage due to herpes zoster (a viral infection) or compression by a tumor.

Symptoms
The pain can occur spontaneously but is often triggered by touching a particular spot (called a trigger point) on the face, lips, or tongue or by an action such as brushing the teeth or chewing. Repeated short, lightning-like bursts of excruciating stabbing pain can be felt in any part of the lower portion of the face but are most often felt in the cheek next to the nose or in the jaw.

Usually, only one side of the face is affected. The pain usually lasts seconds but may last up to 2 minutes. Recurring as often as 100 times a day, the pain can be incapacitating. Because the pain is intense, people tend to wince, and thus the disorder is sometimes called a tic. The disorder commonly resolves on its own, but bouts of the disorder often recur after a long pain-free interval.

Diagnosis

***Although no specific test exists for identifying trigeminal neuralgia, its characteristic pain usually makes it easy for doctors to diagnose.*** However, doctors must distinguish trigeminal neuralgia from other possible causes of facial pain, such as disorders of the jaw, teeth, or sinuses and trigeminal neuropathy (which is often due to compression of the trigeminal nerve caused by a tumor, stroke, an aneurysm, or multiple sclerosis). Trigeminal neuropathy can be distinguished because it causes loss of sensation and often weakness in parts of the face and trigeminal neuralgia does not.

*Trigeminal Neuralgia,* THE MERCK MANUAL (FEB. 1, 2012),

http://www.merckmanuals.com/home/brain_spinal_cord_and_nerve_disorders/cranial_nerve_dis

orders/trigeminal_neuralgia.html. *See also Fomby v. Astrue*, 2009 WL 1203410 *3 n. 7 (W. D.

Va. May 4, 2009) ("The cause of trigeminal neuralgia "is still unknown," *and any objective*

*abnormalities disclosed in a neurologic examination would exclude a diagnosis of the*

*condition.")* (emphasis added) (report and recommendation adopted by *Fomby v. Astrue*, 2009

WL 1451638 (W.D.Va. May 22, 2009)). Consequently, the lack of objective medical and

laboratory findings as to plaintiff's condition is not an appropriate measure of the severity of her

condition and not a basis for which her claim should be denied.  *See Fomby*, 2009 WL 1203410 (noting the lack of medical and laboratory findings as to trigeminal neuralgia and, instead, focusing on plaintiff's history of treatment, her medications, and her daily activities to recommend that the Commissioner's decision denying benefits be reversed and plaintiff granted benefits).

I agree with the Plaintiff that the ALJ's Decision never addressed Plaintiff's persistent allegations of pain, her long term and repeated treatment for trigeminal neuralgia and her consistent use of pain medications which at least one physician who had seen her multiple times determined she was not abusing or misusing. Nor did he discuss her activities of daily living. During the course of treatment Plaintiff was consistently medicated with Hydrocodone, Methadone and a number of other medications.  She was consistently diagnosed with trigeminal neuralgia.  Further, she reported complications from this medication.  In February 2007 Plaintiff reported medications were working but she fell asleep both at work and while driving (Tr. 187). I conclude the ALJ failed to adequately follow the guidelines of Rule 96-7p by failing to fully consider or discuss Plaintiff's allegations of pain and the fact that she has consistently sought medical care and reported side effects from her medications.  As Rule 96-7 states, evidence that a claimant has sought treatment and followed treatment increases the claimant's credibility. There is no mention of any of these elements in the ALJ's Decision.

The ALJ relies on the opinion of Dr. Miller and Dr. Chipman as opinions that do not substantiate any disabling pain (Tr. 16).  However, those physicians' records often contain significant comments about the presence of pain.[10] For instance, on July 21, 1968, Dr. Chipman

---

[10] The undersigned notes that the plaintiff's pain level described in words is often less than the

assesses pain as somewhat less severe, a level of 6 resulting in moderate functional impairment interfering with some daily activities (Tr. 393). He notes nine medications including Hydrocodone, Klonopin, Lidocaine, Methadone and Prozac among others. In his review of system under Neurological, he notes severe facial pain (Tr. 394), a complaint that is repeated throughout the medical record.

### The Treating Physician Rule

Plaintiff next argues the ALJ erred by failing to give the treating physician, Dr. J. Kirk Rogers, D.O. controlling weight. In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine plaintiffs only once. *See Kirk v. Sec'y of Health and Human Servs.,* 667 F.2d 524, 526 (6th Cir. 1981). In fact, pursuant to agency regulations, if the Commissioner finds "that a treating source's opinion on the issue(s) of the nature and severity of [a plaintiff's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, [the Commissioner] will give it controlling weight." 20 C.F.R. §404.1527(d)(2) (2011). However, the ALJ is not always bound to accept the treating physician's opinion.

In assessing the medical evidence supporting a claim for disability benefits, the ALJ is bound by the so-called "treating physician rule," which generally requires the ALJ to give greater deference to the opinions of treating physicians than to the opinions of non-treating physicians.

---

plaintiff's pain level described in numbers on the VAS scale. For example, on Septemner 12, 2007, her pain is reported as being a 7 out of 10 and "mild to moderate." On the VAS scale, a 7 is considered severe or very severe while a 2 is considered mild. The undersigned does not know the reason for the discrepancy and suggests, upon remand, that Dr. Miller be asked for clarification about the discrepancy.

*Blakley v. Commissioner,* 581 F.3d 399, 406 (6th Cir. 2009). The rationale behind the rule is that

treating physicians are likely to be the medical professionals most able to provide a detailed,

longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique

perspective to the medical evidence. 20 C.F.R. § 404.1527(d)(2). The ALJ must give a treating

source opinion "controlling weight" if the treating source opinion is "well-supported by

medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with

the other substantial evidence in [the] case record." *Ibid.* Even if the ALJ does not give

controlling weight to a treating physician's opinion, he must still consider how much weight to

give it; in doing so, the ALJ must take into account the length of the treatment relationship,

frequency of examination, the extent of the physician's knowledge of the impairment(s), the

amount of relevant evidence supporting the physician's opinion, the extent to which the opinion

is consistent with the record as a whole, whether or not the physician is a specialist, and any

other relevant factors tending to support or contradict the opinion. 20 C.F.R. § 404.1527(d)(2)-

404.1527(d)(2)-(6). *Friend v. Commissioner,* 375 Fed.Appx. 543, 550 (6th Cir. 2010).

      An ALJ is required to set forth a valid basis for rejecting the opinions of treating, examining,

and non-examining sources. *Williams v. Astrue*, 2009 U.S. Dist. LEXIS 13623 (E.D. Tenn. Feb. 20,

2009) *11 (Jordan, J.).

      Social Security regulations require that the findings of the treating physician as to the

severity of an impairment be accorded controlling weight if they are well-supported by

medically accepted clinical and laboratory diagnostic techniques and are not inconsistent with

the other substantial evidence in the record. 20 C.F.R. § 404.1527(d)(2) (2002). The cited

regulation acknowledges that more weight should be granted to the opinions of a treating source because:

> These [treating] sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations.

(*Id*.)

In this case the ALJ's Decision notes, "In reviewing the medical records, the opinion(s) of a treating medical source must be given substantial weight unless 'good cause' is shown to the contrary." (Tr. 16). "Good cause exists if an opinion is not bolstered by the evidence, if the evidence supports a contrary finding, or if the opinion is conclusory or inconsistent with the medical records. The opinion may also be discounted when it is not accompanied by objective medical evidence. *See Rogers v. Comm'r of Soc. Sec*., 486 F.3d 234, 242 (6th Cir. 2007). (See also, 20 C.F.R. 416.927(d) and SSR 96-2p)." (Id.)

The ALJ proceeds to state that no explanation or insight was provided in the medical opinion form filled out by Dr. J. Kirk Rogers, D.O. as to how Dr. Rogers reached his diagnoses. *Id*. "In short," the ALJ states, "the medical evidence of record as a whole . . . do not substantiate substantiate . . . the disability conclusion . . . ." (Tr. 17). The ALJ's Decision fails to properly analyze the evidence presented. Dr. Rogers' medical opinion form was completed September 27, 27, 2007. In the form, he stated that Plaintiff experienced chronic pain in the left chin and mandible, and that the pain affected her talking, so she could not work on a full-time basis. (Tr. 371-73). The medical evidence of record substantially aligns with the opinion presented by Dr. Rogers on the medical opinion form. In November 2006, a neurosurgical consult with James A. A. Killeffer, M.D. confirmed V3, non-typical, trigeminal neuropathic pain. (Tr. 174-75). An

23

MRI of Plaintiff's cervical spine in March 2007 indicated a disc bulge at level C5-6 and a disc

protrusion at level C6-7. (Tr. 276-78). In May 2007, Thomas P. Miller, M.D. diagnosed Plaintiff

Plaintiff with degeneration of cervical IV disc and cervical radiculopathy. (Tr. 179, 181). In

August 2007, a consultative examination report showed that Plaintiff has an adjustment disorder

with depressed mood, limiting coping skills, and her GAF is 60. (Tr. 347-49).

I agree with Plaintiff that these records give great support to the conclusions made by Dr.

Rogers. Each record bolsters the opinions stated in the medical opinion form. There are

however some notes in the records of the treating physicians which may provide support for the

decision of the Commissioner. Thus I do not conclude the ALJ's failure to give controlling

weight to the medical opinion of Dr. Rogers constitutes reversible error. However, I do not

conclude the medical evidence taken as a whole supports the ALJ's decision. In his opinion the

ALJ states there is sufficient medical evidence of record on which to determine the claimant's

disability and notes Dr. Rogers was not contacted to seek clarification of his disability

assessment. In light of the substantial evidence of disability in the record I conclude this

clarification was necessary. The other physicians all consistently note Plaintiff's complaints of

pain and they are often severe complaints. There are complaints about the side effects of her

medication which would impact her ability to work. In fact the only physician who clearly gives

an opinion about how these conditions impact her ability to work is her treating physician, Dr.

Rogers and his opinion is disabling.

## Conclusion

Having carefully reviewed the entire administrative record and the briefs of the parties filed in support of their respective motions, I conclude the findings of the ALJ and the decision of the Commissioner that plaintiff can perform sedentary work is not supported by substantial evidence when one looks at all of the evidence of record. However evidence of disability is not overwhelming and there is some evidence to support the Commissioner therefore remand is the appropriate remedy. Accordingly, I RECOMMEND that:

1. Plaintiff's motion for judgment on the pleadings (Doc. 11) seeking judgment as a matter of law be GRANTED in PART to the extent it can be said to seek remand under Sentence Four of 42 U.S.C. § 405(g).

2. Defendant's motion for summary judgment (Doc. 17) be DENIED.

3. The Commissioner's decision denying benefits be REVERSED and REMANDED pursuant to Sentence Four of 42 U.S.C. § 405(g) for action consistent with this Report Report and Recommendation (1) to further evaluate Plaintiff's allegations of pain in light of the fact that there are no objective medical or laboratory tests to diagnose Trigeminal Neuralgia or to measure the pain level it causes and in light of her longitudinal history of her treatment for Trigeminal Neuralgia and (2) to further evaluate evaluate the weight to be given the treating physician, Dr. Rogers and to seek further clarification of the basis of his disabling opinion. [11]

S /William B. Mitchell Carter
UNITED STATES MAGISTRATE JUDGE

---

[11] Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b) of the Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140, 88 L.Ed.2d 435, 106 S.Ct. 466 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive or general. *Mira v. Marshall*, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Federation of Teachers*, 829 F.2d 1370 (6th Cir. 1987).